[No. 1550.]

THE BOARD OF COUNTY COMMISSIONERS OF PITKIN
COUNTY V. PRICE & McCHESNEY.

1. ELECTIONS—COMPENSATION FOR PUBLISHING NOMINATIONS.

Section 1423, Gen. Stats. ( Mills' Ann. Stats. sec. 1878 ) which provides
the fees to which publishers of newspapers are entitled for the pub-
lication of all legal advertisements, does not apply to the publication
of the list of nominations under the election law of 1891.   Since the
statute does not fix the amount of compensation for publishing the
list of nominations, the publishers of newspapers for such publi-
cations are entitled to receive from the county the reasonable value
of the work.

2. LEGAL ADVERTISEMENTS—STATUTE CONSTRUED.

Legal advertisement as contemplated by sec. 1423, Gen. Stats. ( Mills'
Ann. Stats. sec. 1878 ) is an advertisement or notice which is the
outgrowth of, or rendered necessary by, proceedings in court, and
does not include the publication of the list of nominations as re-
quired under the election law of 1891.

*Error to the District Court of Pitkin County.*

Mr. H. L. McNAIR, for plaintiff in error.

Mr. JOHN R. WILEY, for defendants in error.

BISSELL, J., delivered the opinion of the court.

Price & McChesney under their firm name were engaged
in publishing a newspaper in Aspen, called the Aspen Trib-
une.   Under the election act of 1891, the county clerk,
Fishel, sent the official ticket with its various emblems to the
Tribune office and ordered its publication.   It is conceded
the clerk had the authority to give the order and that under
it the Tribune published the ticket for the statutory time and
one additional day under the clerk's direction.   After the
publication was completed Price & McChesney presented
their bill to the board of county commissioners, which was

disallowed.    When the board refused to audit and pay the bill this suit was begun in the district court to recover $970.20 for the publication.    At the trial the evidence which the plaintiffs offered in support of their claim was directed to proof of the amount of space occupied by the ticket and the emblems computed by newspaper columns and inches of measurement, and to the further point that an inch of space in nonpareil type would amount to one hundred words or a folio as defined in the statute hereafter referred to.    It was therefore insisted by the plaintiffs that they were entitled to recover at the rate of seventy-five cents for each folio as it should be determined by the space occupied and measured by inches. Of course it is true that in the publication of a ticket there is a large amount of unoccupied space and by actual count there would be a very limited number of folios of one hundred words.    No proof was offered as to the value of the work, for the plaintiffs relied entirely on the statute.    On the conclusion of the plaintiffs' case the court, who had theretofore ruled that the statute fixed the measure of the recovery, offered to allow the plaintiffs to amend the complaint and to admit evidence of the reasonable value of the work.    This offer was declined and the plaintiffs relied entirely on the statute.    This simple narration is enough to exhibit the case.

So far as we are advised by counsel, or have been able to discover, there is no statute with reference to the fees of publishers except section 1423 of the General Statutes, which generally provides that publishers of newspapers shall be entitled to seventy-five cents for the first insertion of each folio of one hundred words, and forty cents for each subsequent insertion "for the publication of all legal advertisements."    The only question is then whether this statute is applicable and whether the compensation of the publishers is to be measured by that standard.    We are quite of the opinion that this cannot be.    We are ready to concede that in one sense it is a legal advertisement, because it is lawful, but it is not a legal advertisement in the sense in which the term is used in the statute, nor is it applicable to the work done.

The act of 1891 which directs the publication of official ballots was passed long after the enactment of this section which has been on the books for many years.  It undoubtedly prescribes that the tickets shall be published but through some oversight no scale or measurement is fixed by which the compensation of the printer shall be determined.  As we view it, a legal advertisement, as that term is used in the statute, is one which is the outgrowth of, or rendered necessary by, proceedings in court, like the publication of a summons, the publication of a decree, or any other notice which may be ordered by the court or permitted by law in the prosecution of suits at law or in equity.  Since we conclude it is totally inapplicable there is only one basis on which the plaintiffs may recover.  The clerk was authorized to give the order to publish the tickets, the paper had a right to print them and the county became responsible to pay whatever the papers publishing them might be able to show was the reasonable value of the work done at the place where it was performed and in the paper in which the advertisement was put.  It would naturally follow that there might be some difference in cost in various counties, dependent on the value of space and cost of labor and various other considerations.  But as the statute is silent respecting the charge which the newspapers may make and the fees which they may collect for the service the value must be established.

If the plaintiffs had accepted the court's suggestion and offered proof of the reasonable value of the printing we might under our statutory authority have either modified and affirmed the judgment, or entered such judgment as the testimony warranted.  But in the absence of such proof, we are without the power, and can only reverse the case and send it back for another trial, which is accordingly done.

*Reversed.*